UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| MELVIN TERREL NETHERY and LAURA NETHERY, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 3:24-cv-00058-GFVT-EBA |
| v. | ) ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| H. TROY ETHINGTON, *et al.,* | ) ) | **ORDER** |
| Defendants. | | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on the Parties' cross-motions for summary judgment. Plaintiffs Melvin Terrel Nethery and Laura Nethery argue that they have been deprived of various constitutional rights and judgment in their favor is warranted. [R. 30.] Conversely, Defendants Shelbyville City Council, Shelbyville Historic District Commission, and H. Troy Ethington, Mayor of Shelbyville, argue that all of the Plaintiffs' claims fail as a matter of law. [R. 29.] For the reasons set forth below, this Court **GRANTS** the Defendants' Motion for Summary Judgment [**R. 29**] and **DENIES** the Plaintiffs' Motion for Summary Judgment. [**R. 30**.]

**I**

Many of the facts that give rise to this action are undisputed. In 1985, the City of Shelbyville enacted Chapter 72 of its Code of Ordinances, which established the Shelbyville Historic District Commission (SHDC) and authorized the creation of historic districts. *See* Shelbyville, Ky., Municipal Code § 72.001 *et. seq*. Pursuant to the Shelbyville Code of Ordinances, the SHDC recommends designation of historic districts and landmarks based on

their architectural, historical, or cultural significance, and the City Council may enact ordinances in accordance with the SHDC's recommendation. *Id.* at § 72.003. Properties within these designated districts are subject to certain conditions. One such condition is that owners of property situated within a designated historic district must obtain a Certificate of Appropriateness (COA) before undertaking exterior alterations, demolition, or new construction with respect to their property. *Id.* at § 72.004.

Plaintiffs Melvin Terrel Nethery and Laura Nethery own a residential property at 516 3rd Street in Shelbyville, Kentucky. [R. 1-1 at 2.] The Netherys purchased the property in 2005 from Mr. Nethery's father, who had owned the property since approximately 1971. [R. 30-1 at 2.] In 1991, while Mr. Nethery's father owned the property, but predating the Netherys' ownership, the SHDC added the property to the Historic District by ordinance. [R. 34-1; R. 34-2.]

In 2024, without first seeking a COA, the Netherys sought to conduct several repairs on the property, including: removal of wood siding and replacement with vinyl siding, removal and replacement of windows, foundation repair, removal and replacement of the wooden porch and railing, among various other repairs. [R. 1-1 at 7.] On March 7, 2024, shortly after commencing these repairs, the Netherys ran into "red tape" when they received a Stop Work Order which directed them to cease "construction, alterations or repairs" on their property. [R. 29-12.] The Stop Work Order included an attachment which set forth the applicable provisions of the Shelbyville Code of Ordinances and Shelbyville Historic District Guidelines. [R. 29-14.]

Brian Cushing, the Coordinator of the SHDC, along with Shelbyville Police Chief Gentry, posted the Stop Work Order on the Netherys' property on March 7, 2024, at approximately 11:00 a.m. [R. 29-11.] Around 2:00 p.m. on that same day, Mr. Nethery met

2

with Shelbyville Mayor, Troy Ethington. *Id.* The Incident Report from this meeting states that Mr. Nethery indicated he was unwilling to comply with the Shelbyville Code of Ordinances, as applicable to the exterior repairs of his property. *Id.* Nevertheless, the Netherys have not undertaken any further repairs of their property since March 7, 2024.

The above facts are largely undisputed. However, the parties diverge in their recollection of the events that preceded the issuance of the Stop Work Order. The Defendants state that on February 28, 2024, upon noticing that the Netherys had begun exterior alteration of their property, Mr. Cushing sent a letter to Mr. Nethery noting that the Netherys' property was located within Shelbyville's Historic District. [R. 29-10.] The letter explained the requirement to obtain a COA before altering the exterior of the property, as well as the process for obtaining the COA. *Id.* Mr. Nethery testified that he does not recall receiving the letter, and thus had no advance notice of his requirement to apply for a COA. [R. 29-7 at 55-56.] However, on March 5, 2024, prior to the issuance of the Stop Work Order, but subsequent to the Letter, Mr. Nethery met with Mr. Cushing at Shelbyville City Hall, and stated that he would continue exterior alterations on his property. [R. 29-11.]

Upon receiving the Stop Work Order, rather than apply for a COA, the Netherys filed a Complaint in Shelby Circuit Court seeking monetary relief. [R. 1-1.] The Netherys first assert that their property has been subject to an unlawful regulatory taking, in violation of the United States and Kentucky Constitutions. *Id.* at 8-10. The Netherys next bring a claim for violation of their procedural due process rights, again in violation of both the United States and Kentucky Constitutions. *Id.* at 10-12. And finally, the Netherys claim that Section 72.004(B) of the Shelbyville Code of Ordinances is unconstitutionally vague. *Id.* at 12. The Defendants removed the action to this Court on August 28, 2024. [R. 1.] Following the completion of discovery, the

Netherys and the Defendants each filed a motion for summary judgment. [R. 29; R. 30.] Those motions have now been fully briefed and thus are ripe for review.

## II

### A

Under Rule 56, summary judgment is appropriate where the pleadings, discovery materials, and other documents in the record show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-35 (1986). "A genuine dispute exists on a material fact, and thus summary judgment is improper if the evidence shows 'that a reasonable jury could return a verdict for the nonmoving party.'" *Olinger v. Corp. of the Pres. Of the Church*, 521 F.Supp.2d 577, 582 (E.D. Ky. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

A fact's materiality is determined by the substantive law, and a dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. "[T]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). "Instead, 'the non-moving party has an affirmative duty to direct the Court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact.'" *J.B-K.-1 v. Sec'y of Ky. Cabinet for Health & Fam. Servs.*, 462 F. Supp. 3d 724, 731 (E.D. Ky. 2020), *aff'd sub nom. J. B-K. by E.B. v. Sec'y of Ky. Cabinet for Health & Fam. Servs.*, 48 F.4th 721 (6th Cir. 2022) (quoting *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001)). Additionally, where "a party fails to properly support an assertion of

4

fact or fails to properly address another party's assertion of fact" the Court may treat that fact as undisputed." Fed. R. Civ. P. 56(e).

The moving party has the initial burden of demonstrating the basis for its motion and identifying those parts of the record that establish the absence of a genuine issue of material fact. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). The movant may satisfy its burden by showing "that there is an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 325. Once the movant has satisfied this burden, the non-moving party must go beyond the pleadings and come forward with specific facts demonstrating there is a genuine factual issue in dispute. *Hall Holding*, 285 F.3d at 424 (citing *Celotex Corp.*, 477 U.S. at 324).

The Court must then determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). In doing so, the Court must review the facts and draw all reasonable inferences in favor of the non-moving party. *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001). To that end, summary judgment is inappropriate where there is a genuine conflict "in the evidence, with affirmative support on both sides, and where the question is which witness to believe." *Dawson v. Dorman*, 528 Fed. Appx. 450, 452 (6th Cir. 2013). Notably, a party opposing summary judgment must present affirmative evidence beyond "conclusory allegations, rumors, and subjective beliefs." *Mitchell v. Toledo Hospital*, 964 F.2d 577, 584-85 (6th Cir. 1999).

The summary judgment standard does not change because a court faces cross-motions for summary judgment. *Profit Pet v. Arthur Dogswell, LLC*, 603 F.3d 308, 312 (6th Cir. 2010)

(citing *Taft Broadcasting Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)). Cross-motions do not require a court to grant judgment as a matter of law for one party or the other. *Id*. Rather, a court must consider the merits of each motion and take care to draw all reasonable inferences against the party whose motion is under consideration. *Id*. The Court may not "treat the case as if it was submitted for final resolution on a stipulated record." *Ohio State Univ. v. Redbubble, Inc.*, 989 F.3d 435, 442 (6th Cir. 2021).

**B**

The Takings Clause of the Fifth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, provides that "private property shall not 'be taken for public use, without just compensation.'" *Murr v. Wisconsin*, 582 U.S. 383, 392 (2017) (quoting U.S. Const. amend. V). The analogous provisions of the Kentucky Constitution generally provide the same. Ky. Const. §§ 13, 242.[1] "The plain language of the Takings Clause requires the payment of compensation whenever the government acquires private property for a public purpose." *Murr*, 582 U.S. at 392. A primary goal of the Takings Clause is to prevent the government "from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States*, 364 U.S. 40, 49 (1960).

The Supreme Court has identified two types of takings. The first is a physical taking which occurs "[w]hen the government physically acquires private property for a public use." *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 147 (2021). In such physical takings, the

---

[1] The Netherys bring a takings claim under both the United States and Kentucky Constitutions. [R. 1-1 at 9.] While Section 13 of the Kentucky Constitution closely tracks the Fifth Amendment's Taking Clause, Section 242 of the Kentucky Constitution also requires "just compensation for property taken, injured, or destroyed." Neither party cites any authority to suggest that the Court should treat the Netherys' takings claims differently, so the Court will employ the same analysis for both claims.

government is under "a clear and categorical obligation to provide the owner with just compensation." *Id.* The second type is a regulatory taking which occurs "[w]hen the government, rather than appropriating private property for itself or a third party, instead imposes regulations that restrict an owner's ability to use his own property[.]" *Id.* at 148. "[W]hile property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking." *Id.* (quoting *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393 (1922)).

Within the regulatory taking context, there are two categories: a total regulatory taking and a partial regulatory taking. *Andrews, Trustee of Gloria M. Andrews Trust Dated April 23, 1998 v. City of Mentor, Ohio¸* 11 F.4th 462, 468 (6th Cir. 2021). A total regulatory taking "'deprives [the] land of all economically beneficial use,' leaving the land 'economically idle.'" *Id.* (quoting *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1019 (1992)). Total regulatory takings are subject to the "categorical rule" that, once the taking is found, the government must compensate the property owner. *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency¸* 535 U.S. 302, 330 (2002).

A partial regulatory taking, on the other hand, occurs "[w]here a land use regulation causes a loss of anything less than 100 percent of the property's value[.]" *Waste Servs. of the Bluegrass, LLC v. City of Georgetown, Kentucky*, No. 5:20-cv-410-KKC, 2024 WL 843959, at *5 (E.D. Ky. Feb. 28, 2024). In that instance, a taking may still be found based on a "complex of factors," including "(1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with investment-backed expectations; and (3) the character of the governmental action." *Palazzolo v. Rhode Island*, 533 U.S. 606, 617 (2001) (citing *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 124 (1978)). These factors were articulated

7

in *Penn Central Transportation Co. v. New York City* and thus are referred to as the *Penn Central* factors.

**1**

The Netherys advance two theories upon which they allege a taking has occurred.  The first is that the creation of the historic district amounts to a taking.  [R. 30-1 at 7-8.]  The Netherys argue that the taking of the property began in 1985, when the Shelbyville City Council created the SHDC and designated the property as within the historic district.  *Id.* at 8.  Of course, this predates the Netherys' ownership of the property, but the Netherys assert that the continued enforcement of the ordinance constitutes a taking.  *Id.*  The second theory is that the Stop Work Order constitutes a taking because it has rendered the Netherys unable to complete necessary repairs and thus interferes with their ability to rent out the top portion of their property.  *Id.* at 9.

The Netherys do not allege under either theory that the City of Shelbyville has physically invaded the property, nor do they allege that their property has been rendered completely valueless.  Rather, they allege that both the designation of their property as within the historic district and the issuance of the Stop Work Order restrict their ability to use their property and derive income from it.  [R. 30-1 at 9.]  In short, "[t]his case does not present the 'classic taking' in which the government directly appropriates private property for its own use." *Tahoe-Sierra*, 535 U.S. at 324 (quoting *Eastern Enters. v. Apfel*, 524 524 U.S. 498, 522 (1998)).  "Instead the interference with property rights 'arises from some public program adjusting the benefits and burdens of economic life to promote the common good.'" *Tahoe-Sierra*, 535 U.S. 324-25 (quoting *Penn Central*, 438 U.S. at 124).  Thus, the Netherys allege a partial regulatory taking, subject to the *Penn Central* analysis.

**2**

As a threshold issue, the parties dispute whether the Netherys' takings claim, with regards to the Stop Work Order, is ripe.  Previously, property owners had to complete a two-step process before a takings claim was ripe for adjudication: (1) the government agency responsible for the land-use regulation must have reached a final, definitive decision applying the regulation to the property at issue and (2) the claimant had to seek and be denied just compensation via available state remedies before filing in federal court.  *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 194 (1985).  However, in *Knick v. Township of Scott, Pennsylvania*, the Supreme Court overruled the second requirement, allowing property owners to bring a takings claim in federal court without exhausting state remedies.  588 U.S. 180, 185 (2019).

In the wake of *Knick*, a government agency must still have rendered a "final, definitive decision" with regards to the property at issue.  *Id.* at 188.  "The finality requirement ensures that an alleged taking has sufficiently crystalized to enable review of the merits."  *Lilly Inv. v. City of Rochester*, 674 Fed. Appx. 523, 526 (6th Cir. 2017).  The Defendants contend that because the Netherys have not applied for a COA as required by the Shelbyville Code of Ordinances, they have not suffered a "final injury."  [R. 29-17 at 14.]  The Netherys retort that the Stop Work Order itself is a final injury because it has left them with no available "choices or alternatives" and represents a "definitive position" that has been reached by the SHDC.  [R. 30-1 at 3.]  Further, the Netherys claim that the Stop Work Order provides no method to administratively or judicially appeal or contest it, and thus, it is a final order.  *Id.*

In *HRT Enterprises v. City of Detroit, Michigan*, the Court found that the plaintiff's takings claim was ripe because "the permissible uses of [plaintiff's] property are known to a

reasonable degree of certainty, meaning its claim does not rest on purely hypothetical or future events."  163 F.4th 319, 328 (6th Cir. 2025).  By contrast, at present, the permissible uses of the Netherys' property are not known with any degree of certainty until the SHDC has an opportunity to review an application for a COA and issues its decision on that application.  As things currently stand, the Defendants have not reached a "definitive decision" as to "how the regulations at issue apply to the particular land in question."  *Id.* (quoting *Pakdel v. City & Cnty. of San Francisco*, 594 U.S. 474, 475 (1997)).  Thus, the finality requirement has not been met.

In recognition that finality in this context is a prudential requirement rather than a jurisdictional one, Courts have recognized a number of exceptions to the finality requirement, particularly when requiring further action would be futile.  *Id.* at 528; *See also Lucas*, 505 U.S. at 1012-13.  First, when the parties have reached an "impasse" and further proceedings "would not be productive," the finality requirement is typically not imposed because it is unproductive "to put barriers to litigation in front of litigants when it is obvious that the process down the administrative road would be a waste of time and money."  *Bannum, Inc. v. City of Louisville*, 958 F.2d 1354, 1362-63 (6th Cir. 1992).  Second, a city may not impose "repetitive or unfair land-use procedures in order to avoid a final decision."  *Palazzolo*, 533 U.S. at 621.

For example, in *Lilly Investments*, the City of Rochester issued a Stop Work Order which prevented the plaintiff from finishing and operating his dental clinic.  674 Fed. Appx. at 524.  The plaintiff then took corrective action to bring his clinic into compliance, to no avail.  *Id.*  The City refused to lift the Stop Work Order or vote on the project until the plaintiff waived its right to bring further claims against the City and paid the fine.  *Id.*  Thus, the plaintiff and the City had reached an "impasse."  *Id.* at 527.  The City refused to reach a "final decision" such that the plaintiff's claims would ripen, unless the plaintiff forfeited the right to bring a claim once ripe.

10

*Id.* The Sixth Circuit held that the plaintiff's takings claim met the finality prong because further procedures would be futile. *Id.* at 529.

The Netherys face no such conundrum. The Defendants have provided options and alternatives to the Netherys—namely, applying for a COA. Application for a COA would grant appeal rights to Netherys if the SHDC denied the application, and the SHFC has given no indication that it will refuse to reach a "final decision" on such an application to prevent the Netherys' claim from ripening. In fact, the Shelbyville Code of Ordinances requires that the SHDC approve or disapprove an application for COA within forty-five days of receiving such an application. Shelbyville, Ky., Municipal Code § 74.004(C)(1). The Netherys assert that the Stop Work Order is "final" and of an "indefinite duration," but this is only true in so far as they continue to refrain from filing an application for a COA. The Stop Work Order attachment on its face allows the Netherys the opportunity to resume the repairs they seek to complete, once they follow the prescribed procedures. [*See* R. 29-14.]

As such, the Defendants have not reached a "final, definitive decision," and the Netherys takings claim with regards to the Stop Work Order is not ripe for adjudication. Thus, this claim must be dismissed.[2]

**3**

As for the Netherys claim that the creation of the historic district itself is a regulatory taking, this claim is ripe for review.[3] In contrast to the Stop Work Order, which represents a

---

[2] Claims that are not yet ripe for adjudication should be "dismissed without prejudice, thereby allowing the plaintiff to reassert [that] claim, should it become ripe in the future." *Peters v. Fair*, 427 F.3d 1035, 1038 (6th Cir. 2005).

[3] The Netherys devote just two paragraphs in their Motion for Summary Judgment to this argument and provide no authority to support their argument. Ordinally, "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to. . .put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). However, in the interest of thoroughness, and because this issue can be decided on other grounds, the Court will briefly address this claim.

11

preliminary determination, the Defendants have reached a final, definitive decision with regards to whether the Netherys' property is subject to the Shelbyville Historic District Ordinance generally. In order to establish that a taking has occurred, the Netherys must establish that (1) they possess a cognizable property interest and (2) a "taking" of such property interest occurred. *Coalition for Gov't Procurement v. Fed. Prison Indus., Inc.*, 365 F.3d 435, 481 (6th Cir. 2004). Even assuming the Netherys possess a property interest sufficient to challenge the historic district, for the reasons that follow, the Court finds that the Defendants have established, as a matter of law, that no taking of the Netherys' property has occurred.

**a**

As to whether the Netherys possess a cognizable property interest, they cannot establish a property interest in repairing the exterior of their home by merely asserting that they own the property. *Andrews*, 11 F.4th at 470. Rather, they must demonstrate that the right to renovate the exterior of their home was part of the "bundle of rights" they acquired when they took title to the property. *Lucas*, 505 U.S. at 1003 ("[T]he property owner necessarily expects the uses of his property to be restricted, from time to time, by various measures newly enacted by the State in legitimate exercise of its police power."); *Mahon*, 260 U.S. at 413 ("As long recognized, some values are enjoyed under an implied limitation and must yield to the police power.")

Basic property rights, such as the right to possess, use, exclude, profit, and dispose of the land are included in the property owner's "bundle of rights." *Brotherton v. Cleveland*, 923 F.2d 477, 481 (6th Cir. 1991). However, the right to use the land in a certain way may not be a part of the landowner's bundle of property rights. *Lucas*, 505 U.S. at 1029. The determination of whether a specific use is included in the "bundle of rights" turns "upon an analysis of what [restrictions] the 'background principles of the State's law of property and nuisance already

12

place on land ownership.'" *Andrews*, 11 F.4th at 470 (quoting *Lucas*, 505 U.S. at 1029).  The

burden is on the government to "identify background principles of nuisance and property law

that prohibit the uses [the landowner] now intends" just "as [the government] would be required

to do if it sought to restrain [the landowner] in a common-law action for public nuisance. . ."

*Andrews*, 11 F.4th at 471 (quoting *Lucas*, 505 U.S. at 1031).

In other words, the onus is on the Defendants to establish that the Netherys' actions were

*always* unlawful; that is, that the right to repair the exterior of one's home is not within the

"bundle of rights" that a property owner possesses.  Here, the Defendants have made no such

showing.  The Defendant have not pointed the Court's attention to any background principle of

state property or nuisance law that would have prohibited the Netherys from repairing the

exterior of their property in absence of the Ordinance.[4]  As such, the Court will assume for the

purpose of this analysis that the Netherys had a protected property interest in conducting repairs

on their home.

**b**

Having established a protected property interest, the next issue is whether the Netherys

have suffered a "taking" of that property interest.  *See Coalition for Gov't Procurement*, 365

F.3d at 481.  On a broad level, the Defendants take the position that property owners within the

Shelbyville Historic District maintain full rights to use their properties for occupancy, rental, and

sale, and the ordinance targets legitimate goals related to heritage preservation.  [R. 29-17 at 19.]

The Netherys, on the other hand, assert that they never consented to their property being

designated as within the historic district, nor have they been compensated for this designation.

---

[4] The Court notes that it was likely not entirely clear to the Defendants that the Netherys intended to challenge the Historic District itself as a taking, which perhaps accounts for the Defendants expending efforts to develop argumentation elsewhere. Nevertheless, the Defendants have not met their burden on this point.

13

[R. 30-1 at 8.]  They further argue that the preservation of historic districts does not necessitate prohibiting all construction, alterations, and repairs.  *Id.* at 9.

Having noted above that the Netherys allege a partial regulatory taking, the *Penn Central* factors are applicable.  Thus, the Court must consider (1) the economic impact of the regulation on the landowner, (2) the extent to which the regulation has interfered with distinct investment-backed expectations, and (3) the character of the governmental action.  *Penn Central*, 438 U.S. at 124.  Importantly, the Supreme Court has emphasized that the *Penn Central* standard is not necessarily an easier standard to satisfy than the standards for physical takings or total regulatory takings.  *Tenn. Scrap Recyclers Ass'n v. Bredesen*, 556 F.3d 442, 456 (6th Cir. 2009) (citing *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 539 (2005)).  Instead, *Penn Central* "focuse[s] on identifying situations that approximate traditional physical takings."  *Id.*  Because the Shelbyville Historic District Ordinance does not in any way approximate a traditional physical taking, the Court finds that the Ordinance does not constitute a taking of the Netherys' property.

**i**

Regarding the economic impact on the property owner, the Netherys have failed to show that the historic district imposes any significant economic burden on them.  Generally, Courts evaluate economic impact by comparing the value that has been taken from the property with the value that remains in the property.  *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 497 (1987).  The Netherys focus on the imposition of the Stop Work Order and assert that they have been unable to conduct necessary repairs which has decreased their property value and rendered them unable to rent the top unit of their property.  [R. 30-1 at 9.]  The Netherys state that the property's front porch remains broken, the stairs to the second floor remain unfinished,

14

and the foundation of the property has shifted, all of which they claim devalue the property and constitute an economic burden.  [R. 35 at 6.]

All of this may be true, but the Netherys point the finger in the wrong direction.  There is no evidence that the property, in its current state, would be valued any higher if SHDC declared today that the property were no longer within the historic district.  Of course, the Netherys retort that they would then be free to conduct their planned repairs which would likely improve the property value, but their inability to conduct repairs at current is mostly of their own doing and thus not properly factored into this analysis.  To draw an analogy to tort law, the Historic District Ordinance may be the but-for cause of the Netherys current predicament, but the chain of causation is severed by the Netherys refusal to comply with the procedures which would allow them to escape their self-imposed dilemma.  The Netherys may be correct that if the property continues to be subject to the Stop Work Order, it may fall into such disrepair as to render it uninhabitable.  [R. R. 35 at 6.]  But they ignore that they have the ability to take steps which may result in the SHDC lifting the Stop Work Order.

The proper measure of economic impact in this instance would be to compare the home as it currently stands to the very same home, absent the challenged regulation.  Perhaps a reasonable buyer would value a home subject to historic district regulation less than the same home subject to no such limitation.  Faced with a dearth of evidence on this point, the Court will not speculate.  Furthermore, "diminution in the value of property or other financial injury because of regulatory action by itself does not generally constitute a taking." *Tenn. Scrap Recyclers Ass'n*, 556 F.3d at 456.  As such, the minimal economic impact of the Shelbyville Historic District on the Netherys weighs against finding a taking.

**ii**

Turning to the extent to which the historic district has interfered with the Netherys investment-backed expectations, this factor weighs against the Netherys as well. From a birds-eye view, it may seem that the Netherys' investment-backed expectations have been hampered. After all, they bought the property as an investment rental property, and no party disputes that in its current state, the Netherys cannot derive rental income from the top unit of their property. [R. 30-1 at 9.] On closer inspection however, this factor again weighs against the Netherys because their investment-backed expectations are required to be reasonable, and when they purchased the property, it was already subject to the SHDC regulatory framework. [R. 34-2.]

While acquisition of title after the effective date of a land-use ordinance does not bar a takings claim, "[a] reasonable restriction that predates a landowner's acquisition. . .can be one of the objective factors that most landowners would reasonably consider in forming fair expectations about their property." *Murr*, 137 S. Ct. at 1945. The Netherys contend that they were unaware that the property fell within the boundaries of the historic district until they received a Stop Work Order. [R. 30-1 at 8.] They also contend that a property owner would not reasonably expect that their property would be subject to a Stop Work Order for more than two-years. [R. 36 at 6.]

"All citizens," however, "are presumptively charged with knowledge of the law." *Atkins v. Parker*¸472 U.S. 115, 130 (1985) ("The entire structure of our democratic government rests on the premise that the individual citizen is capable of informing himself about the particular policies that affect his destiny.") Accordingly, it is immaterial whether the Netherys subjectively knew that their property was within the historic district when they purchased it because they were presumptively charged with the knowledge that it was.

16

Similarly, Shelbyville Code of Ordinances § 72.004, which provides for the issuance of a Stop Work Order when exterior alterations are undertaken without a COA, was also in effect in its current iteration when the Netherys took title to the property in 2005.  *See* Shelbyville, Ky., Municipal Code § 72.004 (last amended in 2004).  This provision explicitly states that "[n]o additional work shall be undertaken as long as such Stop Work Order shall continue in effect." *Id.* at § 72.004(B).  From this publicly available ordinance, a reasonable prospective property owner should conclude that a Stop Work Order will be in effect for as long as they continue to violate the Code—whether that be two days or two years.  While the Netherys predicament seems "unexpected," that is not due to the Ordinance, but rather, because few would expect a property owner to sit on their hands for two years while their home falls into disrepair, if they had any other option available.[5]  Nevertheless, the situation the Netherys find themselves in is expressly contemplated by the Code of Ordinances in place at the time they acquired their property, and as such, there has been no interference with their investment-backed expectations.

**iii**

And finally, the character of the government action also weighs against finding a taking. With regard to this factor, "[a] 'taking' may more readily be found when the interference with property can be characterized as a physical invasion by government. . .than when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good." *Penn Central*, 438 U.S. at 124 (citing *United States v. Causby*, 328 U.S. 256 (1946)).  In *Penn Central*, the Supreme Court noted that "this Court has recognized, in a number of settings, that States and cities may enact land-use restrictions or controls to enhance the quality of life by preserving the character and desirable aesthetic features of a city." *Penn*

---

[5] To this end, the Netherys contention that they have "no ability to rectify their situation" [R. 35 at 6] is belied by the record and the procedures set forth in Chapter 72 of the Shelbyville Code of Ordinances.

*Central*, 438 U.S. at 129 (collecting cases).  The Shelbyville Historic District ordinances are a broadly applicable, non-discriminatory framework that protects the City of Shelbyville's legitimate interest in historic preservation.[6]  *See* Shelbyvile, Ky., Municipal Code § 72.001.  Accordingly, the character of the governmental action supports a finding that no taking has occurred.

On balance, with all factors weighing against the Netherys, the Court finds that the Netherys claim that the creation of the Shelbyville Historic District has resulted in a taking of their property fails as a matter of law, and the Defendants are entitled to summary judgment on this claim.

**C**

The Netherys next bring a claim for violation of their procedural due process rights under both the United States and Kentucky Constitutions.  [R. 1-1 at 10-12.]  The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that "No State shall deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV.  Section 14 of the Kentucky Constitution extends similar protections, providing that persons who have suffered an injury to their property "shall have remedy by due course of law."  Ky. Const. §14.  To that end, the Netherys primarily allege failure by the Defendants to provide adequate process in issuing the Stop Work Order.  [R. 1-1 at 10-12.]  As the Sixth Circuit explained in *Howard v. Grinage*, "procedural due process prohibits arbitrary and unfair deprivations of protected life, liberty, or property interests without procedural safeguards."  82 F.3d 1343, 1350 (6th Cir. 1996).

---

[6] Notably, the Netherys do not contend otherwise, and instead, assert that even if the Code of Ordinances serves a legitimate purpose in preserving the heritage of Shelbyville, there must be further notice and opportunity for property owners to be heard.  [R. 35 at 7.]  This seems to be a rebottled procedural due process claim, which the Court will address *infra* Part II(C), rather than in this Section.

The procedural component of the Due Process Clause protects rights created by state law and guarantees that no significant deprivation of life, liberty, or property will take place until notice has been provided and the individuals have a meaningful opportunity to be heard. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985). In *Kentucky Department of Corrections v. Thompson*, 490 U.S. 454 (1989), the United States Supreme Court stated:

> We examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State, *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 571, 92 S. Ct. 2701, 2706, 33 L.Ed.2d 548 (1972); the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient, *Hewitt v. Helms*, 459 U.S. [460] at 472, 103 S.Ct. [864] at 871, 74 L. Ed. 2d 675 [(1983)]. The types of interests that constitute "liberty" and "property" for Fourteenth Amendment purposes are not unlimited; the interest must rise to more than "an abstract need or desire," *Board of Regents v. Roth*, 408 U.S. at 577, 92 S. Ct. at 2709, and must be based on more than "a unilateral hope," *Connecticut Board of Pardons v. Dumschat*, 452 U.S. 458, 465, 101 S.Ct. 2460, 2464, 69 L.Ed.2d 158 (1981). Rather, an individual claiming a protected interest must have a legitimate claim of entitlement to it.

*Thompson*, 490 U.S. at 460, 109 S.Ct. 1904.

**1**

As noted above, "[i]n reviewing an alleged violation of procedural due process, a Court must first determine whether the party has identified a protected liberty or property interest, and then turn to whether the deprivation of that interest contravened notions of due process." *Jahn v. Farnsworth*, 617 Fed. Appx. 453, 459 (6th Cir. 2015). Thus, the threshold inquiry is whether the Netherys have identified a protected property interest in repairing the exterior of their home without interference.[7]

---

[7] It may seem redundant to analyze whether the Netherys have a protected property interest in repairing their property, having already found that they do with respect to their takings claim. *See supra* Part II(B)(3)(a). However, the Sixth Circuit has held that Courts cannot rely on due process case law to determine the validity of takings claims, and by extension, the inverse must be true. *Andrews,* 11 F.4th at 469-70.

The Netherys contend that they have a protected property interest in both the value of their property and the ability to generate revenue by renting out their property. [R. 30-1 at 10.] Namely, because the Netherys have been unable to complete the needed repairs, they claim that they have been unable to use the property "in any economically meaningful way" and have seen a decrease in the value of their property. [R. 35 at 8-9.] The Defendants, on the other hand, assert that the Netherys' interest is in the "uninterrupted use and improvement of real property," and that there is no protected interest in exterior changes made in a historic district without a COA. [R. 32-1 at 24.] The Defendants further contend that a Stop Work Order does not divest ownership, possession, or the right to sell or occupy the property, but rather, it "temporarily suspends unauthorized work until compliance with established procedures is achieved." [R. 34 at 11.]

Property interests are not created by the Constitution, but rather, must derive from an independent source, such as state law. *Roth*, 408 U.S. at 577. "Whether a person has a 'property' interest is traditionally a question of state law." *EJS Properties, LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012). The Netherys do not direct the Court's attention to any independent source from which they derive their alleged protected property interest. Instead, they assert a general interest in the ownership of their property and the ability to derive income from it. [R. 36 at 7.] Of course, they do not allege that they have been deprived of their ownership interest in the property, so that cannot serve as the basis for their procedural due process claim. Instead, their interest seems more aptly characterized as the ability to conduct repairs on their property without government intrusion.

The Supreme Court and Sixth Circuit have made clear that, to find a protected property interest in a particular benefit, "a person clearly must have more than an abstract need or desire

for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it." *R.S.W.W., Inc. v. City of Keego Harbor*, 397 F.3d 427, 435 (6th Cir. 2005) (quoting *Roth*, 408 U.S. at 577).  Accordingly, as the Defendants note, a person cannot claim a protectable property interest in the receipt of a benefit "when the state's decision to award or withhold the benefit is wholly discretionary." *Id.* (quoting *Med Corp., Inc. v. City of Lima*, 296 F.3d 404, 409 (6th Cir. 2002)).

Many of the cases addressing this issue arise out of the issuance and subsequent revocation of a permit.  *See e.g. Hart v. Twp. of Presque Isle*, 761 F.Supp.3d 1011, 1020-22 (E.D. Mich. 2024).  In such a case, the Court determines whether the plaintiffs have vested property rights under state law.  *Id.* (applying Michigan state law to conclude that an invalid permit does not confer vested property rights on a property owner).  The Netherys find themselves in a different situation, however, because the repairs they undertook were always unauthorized—that is, in violation of the Shelbyville Code of Ordinances.  Thus, for the entire duration of their ownership of their property, the Netherys never possessed a vested property right in undertaking exterior alterations on their property without governmental intrusion.  It follows then that they have not been deprived of a right, when the right never existed in the first place.  Whatever right the Netherys thought they had to repair their property was a "unilateral expectation," rather than a "legitimate claim of entitlement."  *See Roth*, 408 U.S. at 577.  As such, the Netherys have not been deprived of a protected property interest, and their procedural due process claim necessarily fails.

**2**

Even assuming, *arguendo*, that the Netherys had a protected property interest in continuing to repair the exterior of their home, they received sufficient process when the Stop

Work Order was issued.  The Supreme Court has recognized that due process "is a flexible concept that varies with the particular situation." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). When assessing the adequacy of process provided, Courts consider (1) the private interest affected by the government action, (2) the risk of erroneous deprivation, and (3) the governmental interest, including the fiscal or administrative burdens that the additional procedural requirements would entail.  *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976).

a

As a preliminary matter, the Netherys argue that procedural due process requires that they must have received *pre-deprivation* notice and an opportunity to be heard prior to the issuance of the Stop Work Order.  [R. 30-1 at 11.]  In short, they argue that the Defendants' process was constitutionality deficient because they did not receive any pre-deprivation notice or hearing.[8] *Id.*  This ignores the flexibility of procedural due process, however.  True, the Supreme Court has held, as the Netherys note, that due process "*usually*. . .requires some kind of" pre-deprivation notice or hearing, but "[i]n some circumstances," post-deprivation process may be sufficient. *Zinermon*, 494 U.S. at 127 (emphasis added).

While it is true that some pre-deprivation process is generally required before the Plaintiffs are "*finally* deprived of a property interest," the alleged deprivation here is far from final.  *Moody v. Michigan Gaming Control Bd.*, 790 F.3d 669, 677 (6th Cir. 2015) (extending *Wolff v. McDonnell*, 418 U.S. 559 (1974)).  "There is an important distinction between temporary, non-final interferences—like stop work orders—and permanent, final ones—like

---

[8] As noted above, the Defendants contend that they did provide the Netherys with pre-deprivation notice when they sent a Letter to Mr. Nethery on February 28, 2024.  [*See* 29-10.]  Mr. Nethery, however, disputes receiving this Letter. [R. 29-7 at 55-56.]  For the sake of this analysis, the Court will draw this inference in the Netherys' favor and assume that the Netherys did not receive any notice that they were violating the Shelbyville Code of Ordinances, prior to the issuance of the Stop Work Order.

22

permit revocation." *Hart*, 761 F.Supp.3d at 1028.  The Stop Work Order did not *finally* deprive the Netherys of their property interest; it only temporarily ceased the Netherys' planned repairs until the SHDC could consider the Netherys' COA.

Faced with a similar factual predicate in *Paeth v. Worth Township*, the Sixth Circuit concluded that the issuance of a stop work order did not violate the plaintiffs' procedural due process rights.  483 Fed. Appx. 956, 962 (6th Cir. 2012).  In so holding, the Court noted that the stop work order "came with instructions for how to apply for a new permit, a process that could have taken less than a day and that involved affording the [plaintiffs] with an opportunity to be heard.  Had the [plaintiffs] performed these steps, they would have been briefly inconvenienced by the stop work order, but the issue would have been resolved quickly." *Id.*  (noting that the notion that the plaintiff's "choice to ignore the proffered procedure" could result in damages "makes little sense.")

The same logic applies here.  The Netherys' quandary could have been resolved long ago had they opted to take advantage of the procedures in the Shelbyville Code of Ordinances.  It would defy logic to hold the Defendants responsible for the Netherys' choice to forego these options.  Regardless, the Stop Work Order is *itself* a pre-deprivation notice.  "To demand notice before an official can inform citizens that they are in violation of the law would be to demand notice as a precondition of notice.  The Constitution does not impose recursively impossible demands upon state officials who seek to enforce the law." *Hussein v. City of Perrysburg*, 617 F.3d 828, 832 (6th Cir. 2010).  Ergo, to the extent that the Netherys were required to receive pre-deprivation notice, they have received it in the form of the Stop Work Order.

23

**b**

Turning to the *Matthews v. Eldridge* factors, the Court first analyzes the private interest affected by the government action. 424 U.S. at 335.  Again, the Netherys would have the Court paint with a broad stoke in consideration of this factor.  They assert that the private interest includes the "significant economic detriment" that has resulted from the Defendants prohibiting them from completing their intended repairs of their property.  [R. 30-1 at 10.]  The Defendants aver that "the property owner's interest is in the uninterrupted use and improvement of real property."  [R. 29-17 at 24.]

In this instance, the Netherys have made their particular interest a bit hard to measure by including interests that may not have been impaired, had they promptly applied for a COA.  At any rate, in *Paeth*, the Sixth Circuit held that "[e]ven assuming the [plaintiffs] had a *valid permit* and an attendant property interest in continuing construction on their home, that interest was not an extremely weighty one." 483 Fed. Appx. at 962 (emphasis added).  By contrast, the Netherys possessed no permit to repair their home, and consequently their private interest must be something less than "not extremely weighty."  *Id.*

The risk of erroneous deprivation is also negligible, and otherwise justified by the Defendants' interest in preventing irreparable harm.  The Netherys argue that the risk of erroneous deprivation is demonstrated by the lack of procedures by which a property owner subject to a Stop Work Order may be heard.  [R. 30-1 at 11.]  This assertion is plainly contradicted by the Shelbyville Code of Ordinances, however.  The Code provides that a property owner subject to a Stop Work Order may apply for a COA, which requires the SHDC to review the COA at a public meeting within thirty days and make a decision on the application within forty-five days.  Shelbyville, Ky., Municipal Code § 72.004(C)(1).

24

In any event, any risk that a property owner may be erroneously deprived of their property is offset by the Defendants' interest in prompt enforcement of the Ordinance. The nature of this kind of Ordinance requires swift action, and the Ordinance's purposes would be frustrated considerably if SHDC were required to provide a property owner with notice and a hearing prior to issuing a Stop Work Order. In the meantime, the property owner could inextricably alter the character of their home, and the City would be left without recourse because it cannot require a property owner to return their home to its original appearance. *See* Shelbyville, Ky. Municipal Code § 72.005.

Accordingly, the minimal private interest is greatly outweighed by the Defendants' legitimate interest in preserving the heritage of Shelbyville. On balance, the Defendants have demonstrated as a matter of law that they have provided the Netherys with all of the process which they are due, and are thus the Defendants are entitled to summary judgment on this claim as well.

**D**

The Netherys final claim alleges that § 72.004(B) of the Shelbyville Code of Ordinances is unconstitutionally vague. [R. 1-1 at 15.] "Under the void-for-vagueness doctrine, a plaintiff may challenge a legislative enactment by arguing that it does not provide adequate notice of proscribed conduct." *15192 Thirteen Mile Road, Inc. v. City of Warren*, 626 F.Supp. 803, 818-19 (E.D. Mich. 1985). "It is a basic principle of due process than an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).

The Sixth Circuit has explained that the vagueness doctrine has two primary goals: (1) ensuring fair notice to the citizenry and (2) providing standards for enforcement, in this instance,

25

by city officials. *Assoc. of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 551 (6th Cir. 2007) (citing *Columbia Nat. Res. v. Tatum*, 58 F.3d 1101, 1104 (6th Cir. 1995)).  Indeed, every law must "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Id.*  The Netherys bear the burden of proving vagueness, and review begins with the presumption that the challenged provision is constitutional.  *United States v. Kernell*, 667 F.3d 746, 750 (6th Cir. 2010).

Section 72.004(A)(1) of the Shelbyville Code of Ordinances provides that "[a] certificate of appropriateness from the Historic District Commission shall be required before a person may undertake. . .[a]lteration of the exterior part of a building or structure that is visible to the public. . ." Section 72.004(B) then provides, in relevant part,

> In the event work is being performed without the required certificate of appropriateness, the Commission shall ask that a Stop Work Order be issued.  In the event work is being performed which is not in accordance with such certificate, the Police Chief or the City Clerk/Treasurer shall issue a Stop Work Order and any law enforcement officer may cite violators in District Court. All work shall cease on the designated property.

Shelbyville, Ky., Municipal Code § 72.004(B).  The next section of the Code provides that "[e]very owner of a landmark, a landmark site, or a property in a historic district shall keep in good repair. . . [a]ll of the exterior portions of the buildings or structures."  Shelbyville, Ky., Municipal Code § 72.005(A)(1).  The Code then reads, in a subsequent section, "[n]o provision in this chapter shall be interpreted to require an owner or tenant to undertake an alteration or to restore his building to its original appearance."  Shelbyville, Ky., Municipal Code § 72.005(B).

The Netherys bring a variety of vagueness challenges to these provisions.  They chiefly assert that they are "caught between two incongruent and vague chapters of the Code." [R. 30-1 at 12.]  They assert that on one hand, Section 72.005 requires them to keep their property in good

26

repair, and Section 72.004 prohibits them from actually making those repairs. *Id.* The Netherys also assert that the Code is ambiguous as to how a Stop Work Order is issued, and further, that the SHDC did not follow its own procedures in issuing the Stop Work Order, thus rendering it unenforceable. *Id.* at 13-15.

As to the Netherys first claim, the challenged provisions are easily reconcilable. Vagueness focuses only on the statute regulating a person's conduct. *See United States v. Avant*, 907 F.2d 623, 625 (6th Cir. 1990) (noting that a vagueness challenge analyzes how the statute defines the prohibited conduct). Here, the prohibited conduct could not be clearer. Section 72.004 squarely prohibits property owners within historic districts from undertaking exterior repairs without first obtaining a COA. *See* Shelbyville, Ky., Municipal Code § 72.004(A). The Netherys do not dispute that their property is within a historic district, nor do they dispute that they undertook exterior repairs without obtaining a COA. As such, the Netherys cannot contend that the statute did not adequately define the prohibited conduct, which is the heart of the void-for-vagueness doctrine. *Stevens v. City of Columbus, Ohio*, No. 21-3755, 2022 WL 2966396, at *6 (6th Cir. July 27, 2022) (quoting *Hill v. Colorado*, 530 U.S. 703, 733 (2000)) ("An ordinance is not unconstitutionally vague on its face if 'it is clear what the ordinance as a whole prohibits.")

Section 72.005 clearly states that a property owner must keep their property in good repair and further clarifies that a property owner may not be required to restore their property to its original condition. *See* Shelbyville, Ky., Municipal Code § 72.005. The Stop Work Order does not charge the Netherys with violating Section 72.005, so the claimed vagueness arises solely from the perceived conflict between Sections 72.004 and 72.005. [*See* 29-12.] But nothing in these provisions is conflicting with respect to the prohibited conduct. As the Defendants note, Section 72.004 does not *prohibit* the repairs that may at times be required to

27

comply with Section 72.005, but rather, Section 72.004 regulates *how* and under what conditions exterior repairs may occur in the Shelbyville Historic District. Germane to this case is the requirement to obtain a COA prior to undertaking exterior repairs. All parties to this action are in agreement that the Netherys (1) did not apply for a COA and (2) undertook exterior alterations on their property. Thus, their actions clearly fell within the confines of the conduct prohibited by Section 72.004, and the Netherys search for vagueness within that provision of Shelbyville Code of Ordinances proves unavailing.

The Netherys next vagueness challenge arises from the procedures in issuing a Stop Work Order. As noted above, the Code provides that "[i]n the event work is being performed without the required certificate of appropriateness, the Commission shall ask that a Stop Work Order be issued." Shelbyville, Ky., Municipal Code § 72.004(B). The Code further provides that "[i]n the event work is being performed which is not in accordance with such certificate, the Police Chief or the City Clerk/Treasurer shall issue a Stop Work Order, and any law enforcement officer may cite violators in District Court." *Id.* Here, the Netherys commenced work without obtaining a COA, so the former provision is applicable.

The Netherys contend that the Code is vague as to who has the authority to issue the Stop Work Order which, in turn, invites arbitrary and discriminatory enforcement of the Code. [R. 30-1 at 12.] In this context, an ordinance is void-for-vagueness when it is "so standard-less that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008). "Statutory language of such a standardless sweep allows policemen, prosecutors, and juries to pursue their personal predilections." *Smith v. Goguen*, 415 U.S 566, 575 (1974). Furthermore, the Netherys "bear[] the burden of establishing that the statute is vague as applied to [their] particular case, not merely that the statute could be construed as vague

28

in some hypothetical situation." *United States v. Krumrei*, 258 F.3d 535,537 (6th Cir. 2001). In essence, the key inquiry is whether the Code, taken as a whole, "provide[s] explicit standards guiding [its] enforcement." *Platt v. Bd. of Comm'rs on Grievances & Discipline of Ohio Supreme Court*, 894 F.3d 235, 252 (6th Cir. 2018) (quoting *United Food & Com. Workers Union, Local 1099 v. Sw. Ohio Reg'l Transit Auth.*, 163 F.3d 341, 359 (6th Cir. 1998)).

Far from vague, the Code provides a very simple if/then test: *if* a property owner alters the exterior of their home without obtaining a COA, *then* the SHDC asks that a Stop Work Order issue. Shelbyville, Ky., Municipal Code § 72.004(B). The Ordinance clearly explains the type of conduct (exterior alterations) and links it to a consequence (Stop Work Order). *Id.* This is sufficient to give the Netherys notice of what is prohibited and provides clear standards to those charged with enforcing the Ordinance. *White Oak Prop. Dev., LLC v. Washington Twp., Ohio*, 606 F.3d 842, 848 (6th Cir. 2010) (The "prohibition against excessive vagueness does not invalidate every statue which a reviewing court believes could have been drafted with greater precision.") (quoting *Rose v. Locke*, 423 U.S. 48, 49 (1975)).

The SHDC does not have "unbridled discretion" in enforcement of the challenged Ordinance. Nor does the Ordinance "delegate[] basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis." *Grayned*, 408 U.S. at 108-09. The enforcer of the Code knows that a failure to apply for a COA before implementing changes to the exterior of a building within the Historic District violates Section 72.005. And a property owner knows that he or she must apply for a COA prior to implementing exterior repairs, lest they receive a Stop Work Order affixed to their property. In short, the Ordinance provides fair notice of the prohibited conduct, such that a person of ordinary intelligence would not have to guess at the meaning of the Ordinance. Further, because the Netherys' conduct clearly falls within the

29

conduct prohibited by the Ordinance, the application of the Ordinance to them was not an arbitrary act by the Defendants. As such, the challenged Ordinance is not vague and the Defendants are entitled to summary judgment on the Netherys' void-for-vagueness claim.

**E**

As a final matter, the Netherys seek to assert a separate claim regarding the enforceability of the Stop Work Order. As noted above, Section 72.004(B) of the Shelbyville Code of Ordinances provides, in relevant part, "[i]n the event work is being performed without the required certificate of appropriateness, the Commission shall ask that a Stop Work Order be issued." Shelbyville, Ky., Municipal Code § 72.004(B). The Netherys contend that the SHDC did not make a request for a Stop Work Order, and instead, Mr. Cushing unilaterally issued the Stop Work Order. [R. 30-1 at 13.] The Netherys assert that because the procedures in the Code were not followed, they are entitled to summary judgment declaring the Stop Work Order unenforceable. *Id.* at 13-14. The issue for the Netherys is that they did not bring this claim in their Complaint. [*See* R. 1-1.]

To receive summary judgment on a claim not pleaded in the original complaint, a plaintiff must amend the complaint in order to give the defendant notice. *Naples v. Lowellville Police Dep't*, 125 Fed. Appx. 636, 644 (6th Cir. 2005). A new claim cannot be raised for the first time in a motion for summary judgment. *Id.* And an attempt to amend the complaint through briefing in support of or opposition to summary judgment is ineffective. *Id.*; *Kinsey v. Ohio*, No. 2:17-cv-982, 2020 WL 1066633, at *4 (S.D. Ohio Mar. 5, 2020); *accord Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004); *Thomas v. United Steelworkers Local 1938*, 743 F.3d 1134, 1140 (8th Cir. 2014) (collecting cases).

30

While the Federal Rules of Civil Procedure allow for liberal pleading, the considerations change once discovery has commenced. *See Gilmour*, 382 F.3d at 1315. "Liberal pleading does not require that, at the summary judgment stage, defendants must infer all possible claims that could arise out of facts set forth in the complaint." *Id.* Through the course of discovery, parties tailor their litigation strategy to develop the claims and defenses for which they have notice. *See Guiffre v. Local Lodge No. 1124, United Steelworkers of Am.*, 940 F.2d 660, 1991 WL 135576, at *5 (6th Cir. July 24, 1991) (Table). Without notice, a party has no reason to seek discovery to develop a defense. *See id.* For this reason, plaintiffs cannot raise a new claim at the summary judgment stage without first receiving leave to amend the complaint. *See Naples*, 125 Fed. Appx. at 644 (affirming dismissal of due process claim where plaintiff raised a liberty interest theory for the first time in response to a motion for summary judgment); *Kinsey*, 2020 WL 1066633, at *4 (dismissing *Monell* claim raised for the first time to survive summary judgment).

Here, the Netherys brought a takings claim, a procedural due process claim, and a void-for-vagueness claim in their Complaint. [*See* R. 1-1.] With respect to the procedures in the Code, the Netherys alleged in their Complaint "Section 72.004 does not appear to give the Historic District Coordinator the authority to issue such a Stop Work Order. It is *vague* as to who actually has the authority to issue the Stop Work Order." *Id.* at 12 (emphasis added). The Netherys clearly did not purport to bring a claim that the Stop Work Order is unenforceable because the SHDC failed to follow the procedures set forth in the Code.[9] Regarding the language of the Code, the Netherys gave the impression that they were only bringing a vagueness claim. Accordingly, the Defendants were not given notice that they needed to develop a defense

---

[9] To the extent that the Netherys seek to use the alleged failure to follow the Code as support for any of their constitutional claims, even when a city violates its own stated procedure "does not in and of itself implicate constitutional due process concerns." *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001) (quoting *Purisch v. Tennessee Tech. Univ.*, 76 F.3d 1414, 1423 (6th Cir. 1996)).

to a claim that the Stop Work Order was unenforceable, and they did not have the opportunity to conduct discovery on that issue or develop argument in their motion for summary judgment. As such, the Netherys cannot be entitled to summary judgment on a claim that is not present on the face of their Complaint.

**III**

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. Defendants' Motion for Summary Judgment [**R. 29**] is **GRANTED;**

2. Plaintiffs' Motion for Summary Judgment [**R. 30**] is **DENIED**;

3. Plaintiffs' takings claim is **DISMISSED WITHOUT PREJUDICE** as unripe; and

4. Judgment shall be entered accordingly.

This the 18th day of March, 2026.

Gregory F. Van Tatenhove
United States District Judge